### HARMAN et al. v. STEAD et al.[1]

(Circuit Court of Appeals, Fourth Circuit.    February 7, 1894.)

#### No. 27.

VENDOR AND VENDEE—BONA FIDE PURCHASERS—TAX SALES.

A bona fide purchaser for full value, without notice, of lands which the vendor had redeemed from a prior tax sale to the state of West Virginia, without paying the taxes for the year in which they were sold, as required by statute, is entitled to hold the same, as against a purchaser at a subsequent sale for the taxes thus omitted, when the want of notice arose from the failure of the county clerk to record the lands as delinquent in a proper book, and the unauthorized issuance by the state auditor of a certificate of redemption, which implied that all taxes due had been paid.    49 Fed. 779, reversed.

On Appeal from the Circuit Court of the District of West Virginia.

In Equity.    Bill by Charles H. Harman and William W. Flannagan, trading as C. H. Harman & Co., against Thomas Stead, Alexander F. Matthews, Homer A. Holt, and William M. Tyree.    The bill prayed that a certain tax sale and deeds thereunder be declared void, and the deeds canceled.    The circuit court dismissed the bill, (49 Fed. 779,) whereupon plaintiffs appealed.

W. D. Dabney and T. S. Martin, for appellants.

Malcolm Jackson, for appellees.

Before FULLER, Chief Justice, GOFF, Circuit Judge, and HUGHES, District Judge.

HUGHES, District Judge.    On the 22d December, 1885, a tract of land containing 1,264 acres, in Nicholas county, W. Va., belonging to James T. and T. B. Marshall, was offered for sale by the sheriff of the county for taxes which had been assessed against the land for 1884, for the nonpayment of which it had been returned delinquent.    There was no bid for the land, and it was purchased for the state according to law.    The tract was omitted from the land books of 1886 according to law.    This land was, on the 7th May, 1886, redeemed from the auditor by the Marshalls, and certified by the auditor to the clerk of the county court of Nicholas county for re-entry upon the land books.    This redemption was certified on the fact that payment of the taxes for 1884, for which the land was sold, was made; but section 33 of chapter 31 of the Code of West Virginia, then in force, provided that the previous owner of lands sold for taxes and purchased by the state may, within one year from the sale thereof, redeem the same by paying into the state treasury the amount of all taxes due thereon, with the interest due on each class of taxes at the time of purchase, in-

---

[1] Rehearing denied February 15, 1894.

cluding such taxes as were or should have been assessed thereon for the year in which the same was sold, etc.

It is conceded in this case that the Marshalls did not pay to the auditor the taxes due for the year 1885, in which the land was sold, as required by law, and that the certificate of redemption given to them by that officer was improperly issued. But the certificate was issued, and in pursuance of the auditor's certificate the land was re-entered upon the land books of Nicholas county for the year 1887, and charged with the back taxes of 1886. It is claimed that the redemption from the sheriff's sale of December, 1885, implied that not only the delinquent taxes of 1884 had been paid, but also those of 1885; that is to say, this was an implication of law, whether the fact was so or not. In June, 1887, C. H. Harman purchased the land from the Marshalls and received a conveyance of title from them, which was recorded January 1, 1888. By a subsequent conveyance, recorded on 22d February, 1888, the land passed to C. H. Harman and W. W. Flannagan, partners in the name of C. H. Harman & Co. Some time after the last-mentioned conveyance, the taxes on the land for the years 1886 and 1887 were paid, either by the Marshalls or by Harman & Co. for them. The vendee of the Marshalls, and his vendee, relying on the auditor's certificate and the fact that no record of the delinquency of the land for the taxes of 1885 had been recorded in the clerk's office of the county where the land was situated, as required by law, believed that the taxes for that year had been paid.

On the 16th December, 1887, the land was sold by the sheriff of the county for the taxes of 1885, and was purchased by Thomas Stead, one of the defendants, at the price of $16.91. No list of real estate delinquent for the taxes of 1885 appears to have been recorded by the clerk of Nicholas county in a well-bound book kept by him for the purpose, or otherwise; no such book having been kept in the clerk's office, and the only lists of land delinquent for taxes of 1885 being the original lists made by the sheriff, returned to the clerk's office, and preserved and filed therein. The plaintiffs, Harman and Flannagan, had no notice or knowledge or intimation from any source, before the conveyance of the Marshalls to Harman, recorded January 31, 1888, or that of Harman to Harman & Co., recorded February 22, 1888, that the land had been returned delinquent for the taxes of 1885, or that it would be offered at a sheriff's sale for such taxes. The plaintiffs had no notice or knowledge of the sale to Stead, or of the proceedings connected with it, until recently before the institution of this suit; nor had they any constructive knowledge of the sale until the deed of the clerk of the county to Stead was recorded, the date of that deed being the 18th day of January, 1889, which was the day on which it was recorded. The clerk's deed, and the surveyor's report preliminary to the sale, describe the land as lying chiefly in Beaver district, but it was sold to Stead as lying in Kentucky district, in Nicholas county.

If the question in this case were between the Marshalls, on one side, and the grantee (Stead) of the state of West Virginia, on the

other, it would be one of some embarrassment; for it was the duty of the Marshalls, in redeeming their land, to pay, not only the taxes due for 1884, for which the land was sold, but also the taxes for 1885, the year of the sale. It was equally the duty of the auditor not to give a certificate of redemption to the Marshalls until the taxes for 1885 were paid. The auditor gave an unauthorized certificate, and so the state and the Marshalls were both at fault. But the question is between bona fide purchasers for full value from the Marshalls and a purchaser from the state at a nominal price at a tax sale, for taxes which the state, by her auditor, had held out to the world to have been paid. By the negligence of the state in the person of her auditor, all the world was given to understand that the title of the Marshalls was free from taxes. Bona fide purchasers, acting on the assurance given by the records of the state and of Nicholas county, purchased the property at full value, and paid all taxes which accrued subsequently to the year 1885. If the law of the state requiring a list of lands delinquent for taxes to be recorded by the clerk of the county in a bound book had been complied with, the overlooking of the unpaid taxes of 1885 by the Marshalls and their assignees could not have happened. The neglect of this requirement of the law operated as a trap to catch innocent purchasers. On the whole case, we think the state of West Virginia, through the illegal acts and omissions of her officers, was not in condition to make a valid sale for the taxes of 1885 on the 16th of December, 1887, when Thomas Stead became the purchaser, and the title which Stead obtained by his purchase was fatally defective as against bona fide purchasers from the Marshalls for full value.

Reversed, and the case remanded for further proceedings in conformity with this opinion.